UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RONALD L. KIRKLAND,

      Plaintiff-Appellant,

v.

SAFEWAY INC., a Delaware
corporation,

      Defendant-Appellee.

No. 97-8073

(D.C. No. 96-CV-264-J)
(Wyo.)

ORDER
Filed August 5, 1998

Before TACHA and BALDOCK, Circuit Judges, and GREENE, Senior District Judge.[*]

Plaintiff's petition for rehearing, filed with the Court on July 27, 1998, is granted

in part. Pages one, three and six of the Court's order and judgment, filed on July 10,

1998, are hereby corrected to reflect that Defendant terminated Plaintiff on January 9,

1996. The clerk is directed to amend the order and judgment accordingly. Plaintiff's

petition for rehearing is denied in all other respects.

Entered for the Court,

Per Curiam.

---

[*] Honorable J. Thomas Greene, Senior United States District Judge for the
District of Utah, sitting by designation.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

RONALD L. KIRKLAND,

      Plaintiff-Appellant,

v.

SAFEWAY INC., a Delaware
corporation,

      Defendant-Appellee.

No. 97-8073

(D.C. No. 96-CV-264-J)

(D. Wyo.)

ORDER AND JUDGMENT[*]

Before TACHA and BALDOCK, Circuit Judges, and GREENE, Senior District Judge.[**]

Plaintiff Ronald L. Kirkland worked for Defendant Safeway for approximately 25 years before he was terminated on January 9, 1996. As a result of his termination, Plaintiff filed suit in the United States District Court for the District of Wyoming alleging that Defendant targeted him for termination on the basis of age in violation of the Age

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable J. Thomas Greene, Senior United States District Judge for the District of Utah, sitting by designation.

Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. Plaintiff also raised several Wyoming state law claims in relation to his termination including: (1) breach of contract; (2) promissory estoppel; and (3) breach of the covenant of good faith and fair dealing. The district court granted summary judgment in favor of Defendant on all claims. On appeal, Plaintiff argues that the district court erred in granting Defendant's summary judgment motion. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

Plaintiff began working full time for Defendant in 1970. Starting as the head clerk in one of Defendant's Denver, Colorado stores, Plaintiff rose through the ranks and ultimately landed a job managing Defendant's Riverton, Wyoming store. During most of Plaintiff's tenure with Defendant, the company utilized a program known as "downward evaluation" to evaluate its employees' performance. Under "downward evaluation," employees were evaluated by their immediate supervisor on an approximate annual basis. The employee was then allowed to comment on the evaluation. Following the employee comment period, the evaluator's immediate supervisor reviewed and approved or disapproved the report.

Plaintiff performed well under the "downward evaluation" system. Between 1990 and 1994, Plaintiff consistently received favorable "downward evaluations" from his supervisor. In 1993, Plaintiff received an award for being store manager of the year for the Cheyenne District. In 1994, however, Defendant introduced a new method for

2

evaluating its store managers termed "upward evaluation." Under this method, the company mailed evaluation forms to the homes of its managers' subordinates. The form listed several criteria and asked the employee to rate his or her manager for each criteria on a scale of one to five, with one being the best score and five being the worst. The company then averaged the scores for each criteria. The company determined that, under this new system of evaluation, a score of 2.5 or less indicated acceptable managerial performance.

Although Plaintiff performed well under the company's former evaluation system, his performance was unacceptable under the "upward evaluation" system. In his first "upward evaluation," Plaintiff received a 3.03 – a score well outside the acceptable range. The company informed Plaintiff that his score was not satisfactory and that improvement was necessary. In his second "upward evaluation", Plaintiff received a 2.64 – a marked improvement from his prior score, but still not within the acceptable range. The company again informed Plaintiff that his score was inadequate and offered support services to help Plaintiff improve his score. The company also informed Plaintiff that if he received another unacceptable "upward evaluation" score that he could be terminated. In October 1995, Plaintiff received his final "upward evaluation." Plaintiff's final evaluation resulted in a score of 2.75. Finding this score unacceptable, the company terminated Plaintiff on January 9, 1996. This lawsuit ensued.

II.

A.

We review the district court's grant of summary judgment <u>de novo</u>. <u>United States v. Telluride Co.</u>, __ F.3d __, 1998 WL 337856 at *2 (10th Cir. 1998). In doing so, we view the evidence in a light most favorable to the non-moving party, and will uphold the decision only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Jeffries v. Kansas</u>, __ F.3d __, 1998 WL 318533 at * 6 (10th Cir. 1998). A mere scintilla of evidence supporting the non-moving party's theory does not create a genuine issue of material fact. <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1347 (10th Cir. 1997). Instead, the non-moving party must present facts such that a reasonable jury could find in its favor. <u>Id</u>.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff must prove that age was a determining factor in the employer's decision to terminate the plaintiff. <u>Greene v. Safeway Stores, Inc.</u>, 98 F.3d 554, 557 (10th Cir. 1996). The plaintiff need not prove that age was the sole factor behind his termination. <u>Id</u>. Instead, the plaintiff must prove that "age made the difference in the employer's decision." <u>EEOC v. Sperry Corp.</u>, 852 F.2d 503, 507 (10th Cir. 1984). A plaintiff may prove his ADEA claim "by presenting direct or circumstantial evidence that age was a determining factor in his discharge, <u>Lucas v. Dover Corp.</u>, 857

4

F.2d 1397, 1400 (10th Cir. 1988), or the plaintiff may employ the burden shifting device established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) and Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). Greene, 98 F.3d at 557.

Plaintiff argues that he carried his burden of proof under either of these methods for establishing an ADEA claim. Therefore, he argues that the district court erroneously granted Defendant's motion for summary judgment.

B.

In order to make a prima facie showing of age discrimination under McDonnell Douglas, Plaintiff must prove that he was : (1) within the protected age group; (2) doing satisfactory work; (3) discharged despite the adequacy of this work; and (4) replaced by a younger person. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir. 1994). Plaintiff and Defendant agree that Plaintiff met his burden as to the first, second and fourth elements. The parties disagree, however, over whether Plaintiff showed that he performed his job in accordance with Defendant's legitimate expectations.

Plaintiff argues that he produced evidence to the district court which showed that he was performing his job at an acceptable level. Pointing to his performance evaluations under Defendant's old evaluation system and his 1993 manager of the year award, Plaintiff contends that he made a prima facie showing that he was qualified for the position from which he was discharged. The record in this case, however, clearly

5

supports the district court's finding that Plaintiff's job performance did not meet Defendant's legitimate expectations under its "upward evaluation" system.

Although Plaintiff performed acceptably under Defendant's old management criteria, in 1994, the qualifications Defendant required its managers to possess and the method for ensuring its managers maintained those qualifications changed. Defendant evaluated Plaintiff under its new system on three occasions. Plaintiff never received a favorable evaluation. After each poor performance, Defendant notified Plaintiff that the test indicated his skills were inadequate and offered support services to help him improve his managerial skills and achieve an acceptable score. After Plaintiff scored poorly on his second evaluation, Defendant notified him that one more evaluation outside the acceptable range could result in his termination. On his third evaluation, Plaintiff's score increased, placing him even further outside the acceptable performance range. Consequently, on January 9, 1996, Defendant terminated him.

In order to proceed under McDonnell Douglas, Plaintiff was required to make a prima facie showing that he was performing satisfactorily under the criteria in place at the time Defendant terminated him. See Denisi v. Dominicks Finer Foods, Inc., 99 F.3d 860, 865 (7th Cir. 1996). Plaintiff presented no such evidence. Instead, the record shows that at the time of termination, Plaintiff's performance did not meet his employer's legitimate expectations. Accordingly, we conclude Plaintiff failed to make the prima facie showing of age discrimination required to proceed under McDonnell Douglas.

6

Plaintiff argues that even if he failed to prove a prima facie case under McDonnell Douglas, he presented enough direct and circumstantial evidence to preclude summary judgment. Before the district court, Plaintiff presented evidence which he claims showed that: (1) he was a long-time employee of Defendant; (2) he scored well under Defendant's old evaluation system; (3) he possessed the same qualifications as when he was originally hired; (4) his work was satisfactory; (5) Defendant terminated him and older managers to prevent their age-based pensions from vesting; (6) Defendant terminated eight managers in the protected class under the "upward evaluation" system; (7) expert testimony showed that the "upward evaluation" system was designed to discriminate against older workers; and (8) Defendant's agent informed Plaintiff that he did not fit the "new management style." Plaintiff contends that this evidence created a genuine issue of material fact which was not properly decided on summary judgment.

Plaintiff argues that the outcome of this case is controlled by our decision in Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir. 1996). In Greene, we held that an ADEA plaintiff produced evidence sufficient to withstand the defendant's motion for judgment as a matter of law. Reviewing the evidence, we found several facts from which a jury could infer age discrimination. First, we found significant the fact that after Safeway hired a new president, eight managers, only one of retirement age, departed "virtually en masse" from Safeway's ranks. We concluded that this fact evidenced a

pattern from which a reasonable jury could infer age discrimination. Second, we found that the president's statements that the plaintiff "did not fit in with the new culture," made against the backdrop of older executives being replaced by younger executives, could create an inference of age discrimination. We also found persuasive evidence that the defendant temporarily replaced the plaintiff with an older employee. We noted that this action could create an inference that the temporary replacement was hired in order to ward off an age discrimination claim. Finally, we found important the fact that the plaintiff was fired prior to vesting in an "exclusively *age*-based" plan. Greene, 98 F.3d at 563. We concluded that these facts, viewed in a light most favorable to the plaintiff, raised a fact question for the jury.

We find significant differences between this case and Greene. Plaintiff argues that the record demonstrates a pattern of terminating "at-risk" employees similar to the pattern upon which we relied in Greene. In his brief, Plaintiff asserts that out of 82 managers evaluated using Defendant's new system, that eight were terminated and that all eight were within the protected class. At oral argument, Plaintiff retreated somewhat from this assertion stating that Defendant terminated eight managers over the age of forty and one under the age of forty.[1] Examined closely, this evidence does not demonstrate the type of

---

[1] Although the difference in Plaintiff's representations in his brief and at oral argument is seemingly trivial, when viewed in light of the actual numbers at play in this case, the difference is significant. The evidence Plaintiff presented to the district court showed that of approximately 120 managers subject to "upward evaluation," only eleven were below the age of forty. Thus, roughly nine percent of Defendant's managers were

pattern present in Greene.  The record shows that Defendant terminated the eight

managers in this case over a period of several months.[2]  Therefore, unlike Greene, there

was no en masse departure of store managers.  Moreover, the record before the district

court contained evidence tending to show that the eight "upward evaluation" based

terminations did not show age discrimination in a statistically significant manner.  The

record contains no credible evidence to rebut this statistical analysis.[3]

Plaintiff also contends that a jury could infer age discrimination in this case

because Defendant terminated him only a few years before his "age-based" pension

vested.  Relying almost entirely on a retirement benefits handbook circulated to

employees by Defendant, Plaintiff argues that his pension was age-based and that

---

below age forty.  If accepted as true, the representation in Plaintiff's brief suggests that managers under forty were not impacted by "upward evaluation."  An inference could therefore be drawn that the system was designed to discriminate against older workers.  If Plaintiff's representation at oral argument is true, however, the numbers tend to show that managers under age forty were impacted in a manner roughly equivalent to their representative number – approximately ten percent.  Therefore, although the difference between Plaintiff's representations is seemingly slight, the inferences which a reasonable juror could draw from the two are significant.

[2]     Although Plaintiff states that Defendant terminated these "at-risk" managers "within a few days of each other," our reading of the record suggests that the terminations took place over the course of several months.

[3]     Plaintiff did present a report prepared by Dr. John H. Jackson.  The district court found that Dr. Jackson's report did "not show in a meaningful way that older workers within the protected age group were affected proportionately more than workers outside of the protected age group."  After reviewing the report, we agree with the district court, that even viewed in a light most favorable to Plaintiff, the report does little to show that Plaintiff was fired as a result of age.

Defendant terminated him prior to vesting. Defendant insists, however, that the plan is based, not on age, but years of service and that Plaintiff was fully vested at the time of termination. Our review of the evidence on this point, which is noticeably lacking, indicates that the program is based on years of service and that Plaintiff was vested when he was terminated. See Aple. Supp. App. at 278. The burden was on Plaintiff to present evidence supporting his argument. The absence of record evidence compels our conclusion that he did not meet his burden.

We also reject Plaintiff's assertion that his previous work record and self-serving statements create an inference of age discrimination. In 1994, Defendant implemented a new evaluation system. Plaintiff presented no credible evidence to the district court suggesting that Defendant designed the new system to discriminate against managers on the basis of age or that the system disproportionately impacted older managers. Nor did Plaintiff present any evidence showing that he performed acceptably under the new criteria. The record before us demonstrates, at most, that Plaintiff was qualified to be a store manager under a system which Defendant set aside in favor of what it believed to be a more effective method of management and evaluation. Accordingly, Plaintiff's evidence of prior acceptable performance is insufficient to create a genuine factual issue.

Plaintiff finally argues that a reasonable jury could infer age discrimination from Defendant's statement that he "did not fit Safeway's new management style." In Greene, we held that the plaintiff's supervisor's statements that the plaintiff "didn't fit in with the

10

new culture" and that he wanted to move forward with his "new team and I don't have a place for you on the new team" could create an inference of age discrimination. 98 F.3d at 561. No such statements exist in this record. Indeed, the page in the record which Plaintiff cites in support of this argument contains only a statement that Plaintiff did not possess an "appropriate" management style. Absent the special circumstances in Greene and some evidence showing that the statement implicated Plaintiff's age, we believe this statement does not create an inference of age discrimination.

After carefully reviewing the record and viewing the evidence in a light most favorable to Plaintiff, we conclude Plaintiff failed to produce evidence sufficient to demonstrate a genuine issue of material fact as to whether Defendant discriminated against him on the basis of age. Accordingly, we conclude the district court correctly granted summary judgment on Plaintiff's ADEA claim in favor of Defendant.

## III.

In addition to his ADEA claim, Plaintiff also claims that Defendant's actions gave rise to claims under Wyoming state law. Before the district court, Plaintiff argued that Defendant's human resource manual created an implied employment contract which Defendant breached when it terminated him, that his employment relationship with Defendant was such that Defendant owed him a duty of good faith and fair dealing and that Defendant's actions gave rise to a claim for promissory estoppel. In a thorough memorandum opinion, the district court disagreed and granted Defendant's motion for

11

summary judgment.

On appeal, Plaintiff contends that the district court erroneously determined that no genuine issue of material fact existed regarding his state law claims.[4] We have reviewed the parties' briefs, the district court's order, and the entire record before us. We conclude that the district court committed no reversible error by granting summary judgment in favor of Defendant on these claims.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

---

[4] Plaintiff raises for the first time in his reply brief that the district court erroneously granted summary judgment on his promissory estoppel claim. Because "issues not raised in the opening brief are deemed abandoned or waived," Coleman v. B-G Maintenance Mgmt. of Colorado, 108 F.3d 1199, 1205 (10th Cir. 1997), we limit our review to his breach of implied contract and breach of covenant of good faith and fair dealing claims.