**F I L E D**

**UNITED STATES COURT OF APPEALS**

**AUG 4 1998**

**TENTH CIRCUIT**

TERESA INGRAM,

      Plaintiff - Appellant,

v.

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL 2021; EMPLOYEE
BENEFITS COMMITTEE; LUCENT
TECHNOLOGIES, INC., formerly
known as AT&T Technologies, Inc.,

      Defendants - Appellees.

No. 97-6091
(D.C. No. CIV-92-1271)
(Western District of Oklahoma)

**ORDER AND JUDGMENT** [*]

Before **BRORBY** , **BARRETT** and **LUCERO** , Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After she was fired by Lucent Technologies ("Lucent"), [1] Teresa Ingram filed suit against her former employer and her labor union, the International Brotherhood of Electrical Workers, Local 2021 ("the Union"). She contends that Lucent discharged her in retaliation for: (1) seeking workers' compensation benefits, in violation of Okla. Stat. Ann. tit. 85, § 5 (1992); (2) seeking disability benefits under Lucent's employee benefit plan, in violation of § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; and (3) filing a complaint with the Occupational Safety and Health Administration ("OSHA"), in violation of Oklahoma public policy. She also claims that, in firing her, Lucent breached its collective bargaining agreement with the Union. In addition, she alleges the Union breached its duty of fair representation, and that Lucent improperly denied her claim for disability benefits. The district court granted appellees summary judgment on all her claims. Ingram appeals pursuant to 28 U.S.C. § 1291. We affirm.

---

[1] At the time appellant filed this lawsuit, she was employed by AT&T Technologies. This division of AT&T was subsequently spun off as Lucent Technologies. There is no dispute that Lucent is the successor in interest of AT&T Technologies for the purposes of this litigation. See Appellees' Br. (Lucent Technologies and Employee Member Benefit Committee) at 1 n.1. For the sake of clarity and consistency, we will refer to appellant's former employer as Lucent.

# I

While in Lucent's employ, Ingram developed carpal tunnel syndrome. As a result, she was absent from work for almost four months in 1989, and filed for workers' compensation pursuant to Oklahoma law. She also sought disability benefits under her employer's benefit plan. Although she was eventually awarded workers' compensation, Lucent's Employee Benefits Plan Committee denied her disability benefits claim.

Appellant contends that when she returned to work, Lucent refused to accommodate her injury in spite of her and her doctor's requests. Frustrated to be assigned to tasks that aggravated her condition, Ingram wrote to OSHA. In September 1990, she submitted a formal complaint denouncing her allegedly hazardous working conditions. In response, OSHA conducted an inspection of Lucent's facility in Oklahoma City. Although no citations were issued, the compliance officer noted several problems and made recommendations "to reduce the potential and minimize the hazards of upper extremity cumulative trauma disorders." Appellant's App. at 637.

In early 1991, Ingram's injury again prevented her from going to work. On March 6, Lucent mailed her a letter scheduling a medical appointment. The letter states: "Failure to keep this appointment may result in LOSS OF BENEFIT PAY or POSSIBLE TERMINATION OF EMPLOYMENT." Id. at 739 (emphasis in

-3-

original). It also provided appellant with a telephone number to call were she unable to keep the appointment. Appellant, however, did not attend the appointment or alert Lucent of her inability or unwillingness to attend.

Hearing nothing from appellant, Lucent called her home on March 11 and 12, both times leaving messages for her to contact the company. On March 12, Lucent prepared a second letter, hand-delivered to appellant's home that morning, rescheduling her medical appointment and warning, "[i]n the event you fail to maintain this appointment, we will assume you are no longer interested in your employment with the Company." Id. at 645. Lucent also informed the Union that appellant was in danger of being terminated.

A Union representative attempted to contact appellant on March 12 and left a message at her home warning her to contact either her employer or the Union by 11:00 a.m. the next day or she would face termination. She contacted neither, and on March 13 was informed by letter of her termination. The letter states her dismissal was "due to [her] failure to report to Medical." Id. at 647.

Shortly thereafter, appellant initiated a grievance over her discharge. Arbitration proceedings upheld Lucent's decision, with the arbitrator concluding that "[t]he penalty, although harsh, is within reasonable range." Id. at 295.

## II

"We review the grant of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c)." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court.

Kaul, 83 F.3d at 1212 (quoting Wolf, 50 F.3d at 796). The movant bears the burden of showing the absence of a genuine issue of material fact, and if it satisfies this burden, "the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id.

## A

Appellant first contends that the district court should not have granted summary judgment to Lucent as to her three claims of retaliatory discharge. We

-5-

agree with the district court that Ingram has failed to adduce sufficient evidence to substantiate these claims.

The district court subjected each of these claims of retaliation to the burden-shifting framework laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). As neither party challenges this decision, for purposes of this appeal we will assume that the <u>McDonnell Douglas</u> framework properly applies to all of appellant's retaliation claims. Under <u>McDonnell Douglas</u>:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981) (quoting and citing <u>McDonnell Douglas</u>, 411 U.S. at 802, 804). Even assuming that appellant establishes a prima facie case of retaliation, the district court correctly concluded that she did not meet her burden of discrediting the proffered reason for termination.

Once Lucent asserts that it terminated appellant for failing to attend or reschedule her medical appointment, it is Ingram's burden to "present enough evidence to support an inference that the employer's reason was merely pretext,

by showing either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'" Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 530 (10th Cir. 1994) (quoting Burdine, 450 U.S. at 256).

Ingram asserts that Lucent's proffered reason is unworthy of belief because there is no evidence of other employees being terminated for missing medical appointments. The record belies this unsupported claim. The company presented the district court with an affidavit from a Labor Relations Specialist at Lucent indicating that over a ten year period seven other employees had been terminated for the same conduct. See Appellant's App. at 742-44.

Appellant also argues that an absence of disciplinary action when she previously missed several medical appointments shows pretext. On each of these earlier occasions, however, appellant informed her employer that she would be unable to attend the appointment and rescheduled accordingly. It is undisputed that, prior to being terminated for the March incident, appellant did not contact either Lucent or the Union nor did she attempt to reschedule her appointment. Cf. Cone, 14 F.3d at 532 ("To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated.")

Finally, appellant contends that pretext is shown by Lucent's decision to terminate "an employee with a superlative record." Appellant's Br. at 29.

Appellant, however, fails to supplement this assertion with evidence that her performance at Lucent was in fact "superlative," or that such employees are not equally subject to termination for similar conduct.      See Branson v. Price River Coal Co. , 853 F.2d 768, 772 (10th Cir. 1988) ("[P]laintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."). [2]

## B

Appellant next argues that the district court erred in granting summary judgment on her claim that Lucent violated the collective bargaining agreement. She asserts before us that Lucent violated the agreement by terminating her employment without cause.  This assertion is meritless.  As noted above,

---

[2]  Appellant asserts that the district court erred in failing to "address whether requiring medical examinations under the circumstances of this case was a 'legitimate, nondiscriminatory' reason for discharge."  Appellant's Br. at 28. Appellant misunderstands the nature of Lucent's burden at the second step of McDonnell Douglas .  "Step two only requires that the defendant explain its actions against the plaintiff in terms that are not facially prohibited by [the statute]."   EEOC v. Flasher Co.  , 986 F.2d 1312, 1317 (10th Cir. 1992).  "If that [facially nondiscriminatory] reason is applied only against [the protected class], has a disparate impact upon [the protected class], or is otherwise a sham, that comparative analysis occurs under step three where the plaintiff has the burden of proof."   Id. at 1318 n.6.  Appellant, however, provides us with no evidence that Lucent's requirement is itself a pretext for discrimination.  Challenging the requirement without adducing evidence that this policy was implemented for discriminatory purposes or so applied in her particular case does not establish pretext.

appellant fails to establish that her termination was a product of improper motives.

## C

Appellant also asserts that the district court erred in granting summary judgment to the Union. Appellant's claim against the Union involves two claims: "(1) that the employer breached the collective bargaining agreement, and (2) that the union breached its duty of fair representation." Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1357 (10th Cir. 1994) (quoting Aguinaga v. United Food & Commercial Workers Int'l, 993 F.2d 1463, 1469 n.1 (10th Cir. 1993)); see DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163-65 (1983). Because appellant fails to establish that Lucent breached the collective bargaining agreement, her related claim against the Union cannot stand. [3]

## D

Finally, appellant asserts that Lucent wrongly denied her request for disability benefits and that summary judgment on this claim was therefore improper. In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the

---

[3] Appellant also challenges on appeal an order of the district court denying her motion to disqualify the Union's attorneys. Appellant's sole claim against the Union rests on her breach of collective bargaining agreement claim against Lucent. Because the latter claim fails, the former must as well. Because there is no prospect that the outcome of the suit against the Union would be different, this claim is moot and we decline to address its merits.

Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115.

Our first task, therefore, is to determine the appropriate standard of review. The benefit plan at issue provides:

> The Sickness and Accident Disability Benefit Plan is administered through the benefit committees, appointed by the Company . . . which have been delegated the responsibility for managing the day-to-day operations of the Plan including the right to grant and deny initial claims for benefits under the Plan. The Employees' Benefit Claim Review Committees determine conclusively for all parties all questions arising in the administration of the Plan, and any decision of these committees is not subject to further review.

Appellant's App. at 325. Because the terms of the plan grant the administrator discretionary authority to determine eligibility for benefits, its decision "is entitled to review under the deferential arbitrary and capricious standard." Dycus v. Pension Benefit Guar. Corp., 133 F.3d 1367, 1369 (10th Cir. 1998) (reviewing deferentially decisions by committee possessing authority under plan to "decide all questions concerning the application or interpretation of the provisions of the plan"). [4]

---

[4] Appellant contends that the benefit committee's decision is entitled less deference because the same doctor who reviews claims for the committee represented Lucent in opposing appellant's workers' compensation claim. The

(continued...)

Appellant contends that, because she was awarded workers' compensation benefits, she is automatically entitled to benefits under the plan. This assertion is contradicted by the terms of the plan. See Appellant's App. at 674 (Administrative Guidelines, ¶ 1.3) (stating that, although cases qualifying for workers' compensation usually qualify for benefits under plan, "doubtful circumstances" may justify denial of benefits). In addition, the decision to deny benefits was based on reports provided by two doctors and an ergonomics engineer. See id. at 314-20. Consequently, the decision was neither arbitrary nor capricious. [5]

## III

For the foregoing reasons, we **AFFIRM** the decision of the district court.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

---

[4](...continued)
record, however, does not indicate that this doctor was a member of the committee or that he was otherwise given discretionary authority under the plan. See Chambers v. Family Health Plan Corp., 100 F.3d 818, 825-26 (10th Cir. 1996) (less deferential standard of review is triggered by conflict of interest on the part of plan administrator).

[5] Appellant argues that although the benefit committee considered her claim for accident benefits they failed to consider her eligibility for "occupational disease" benefits. This claim is contradicted by the record. See Appellant's App. at 321-22.