Charles E. SALADIN, Plaintiff–Appellant,

v.

PACKERWARE CORPORATION, also known as Berry Plastics Corporation, formerly known as Packer Plastics, Inc., Defendant–Appellee.

No. 01–3175.

United States Court of Appeals, Tenth Circuit.

July 25, 2002.

Before HENRY and HOLLOWAY, Circuit Judges, and BRORBY, Senior Circuit Judge.

## ORDER AND JUDGMENT*

BRORBY, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this employment discrimination case, the district court granted defendant PackerWare Corporation's motion for summary judgment. It determined that plaintiff Charles Saladin had presented insufficient evidence of age bias to warrant a trial. It similarly disposed of his two remaining claims, constructive discharge and retaliation under the Family Medical Leave Act. Because we agree that Saladin has failed to raise disputed issues of material fact with respect to any of his three claims, we affirm.

### I.

PackerWare operates a molded plastics manufacturing plant in Lawrence, Kansas. Saladin was hired in 1984 as a maintenance helper. He was promoted four years later to a position supervising the second shift of the molding operations.

In January 1997, PackerWare sold the plant to Berry Plastics. (The parties refer to defendant as both PackerWare and Berry Plastics. We will adopt a consistent appellation and call the defendant PackerWare.) A new management team instituted sweeping changes in plant operations, including the adoption of an unfamiliar management style, one that sought to diminish the supervisor's role in favor of giving line employees more responsibility over their jobs. At the same time the new approach also required supervisors to enforce work rules more strictly. As evinced by several written and oral reprimands, Saladin did not adjust to the new creed. For example, his direct supervisor, Ken Meissbach, repeatedly asked him to discipline or eliminate "[c]hronic trouble makers" among his subordinates and to apply company policies to all employees on a equal basis. Meissbach complained as well of Saladin's poor "communication" skills and his lack of follow-up on projects and directives. When asked about certain issues at a shift change, Saladin sometimes remarked: "I don't know and I don't care." Meissbach explicitly warned Saladin that unless his job performance improved, he (Saladin) would be demoted. In March 1998, Saladin, now age sixty-six, was demoted back to the maintenance department. He worked there for an additional fifteen months before retiring from the company.

### II.

After his resignation, Saladin filed a charge of age discrimination against PackerWare with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission. Both agencies dismissed the complaint. Saladin then filed this lawsuit in the federal district court, alleging discrimination under the Age Discrimination in Employment Act, retaliation under the Family Medical Leave Act, and constructive discharge. All claims arose out of his demotion. He now appeals the district court's grant of summary judgment.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## A. Age Discrimination Claim

■ Saladin challenges first the district court's ruling that his age discrimination claim lacked evidence sufficient to warrant a trial. The district court applied the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There is no dispute that Saladin established a prima facie case of age discrimination. Nor is it doubted that PackerWare met its burden at the second stage of the *McDonnell Douglas* test by stating that it demoted Saladin because of poor job performance as a supervisor. The only question on appeal is whether Saladin has presented evidence sufficient to show that PackerWare's claimed justification is pretextual. Our independent review of the record convinces us that he did not. In reaching this conclusion, we emphasize that "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997).

In addition to his own subjective perceptions concerning his job performance, Saladin relies heavily on positive assessments by a senior employee, Steve Davids. Though he had apparently supervised Saladin at some point in the past, Davids was not Saladin's supervisor at any time relevant to this suit, including at or near the time of Saladin's demotion. Neither Davids's nor Saladin's perceptions are germane. It matters only what Saladin's supervisor at the time of demotion thought of his job performance. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir.1999). What is more, PackerWare need not persuade us that the reasons it offered to justify Saladin's demotion are

wise or correct; our inquiry is limited to whether PackerWare honestly believed those reasons. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999).

Confronted by the consistently poor evaluations by his direct supervisor Meissbach, and denied the benefit of his own subjective perceptions as well as Davids's, Saladin falls back on a handful of what he calls "ageist" comments directed at him by co-workers and his supervisor. He alleges in particular that he was occasionally addressed as "old man" by company employees, including Meissbach. He adds that Meissbach at least twice asked about his retirement plans, once in 1997, a second time in early 1998. These inquiries, the evidence reveals, were made in the context of Meissbach's sudden need to replace certain employees who were leaving their positions. Meissbach explained that during these conversations with Saladin he asked about Saladin's future plans to gauge the scope of the company's personnel needs.[1]

We are not unconcerned by these comments but regard them, in light of the circumstances, as "stray" remarks not directly linked to Saladin's demotion. *See Cone v. Longmont United Hosp. Ass'n.* 14 F.3d 526, 531 (10th Cir.1994). They are not unlike the remarks at issue in *Stone v. Autoliv ASP Inc.*, 210 F.3d 1132 (10th Cir.), *cert. denied*, 531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 125 (2000). There this court held that comments by a supervisor such as "at [the employee's] age, it would be difficult to train for another position" or "difficult to find a new job" were too isolated and ambiguous to create a jury issue in an age discrimination case. *Id.* at 1140.

Saladin also alleges that when Meissbach demoted him, Meissbach stated that "he [Saladin] had been on the job too

---

1. The total of two inquiries by Meissbach into Saladin's retirement plans, we believe, falls short of "unrelentless questioning of Mr. Sa-

ladin's retirement plans," as Saladin characterizes them.

long." While this comment no doubt was made in connection with the challenged employment decision, it does not on its face reflect age bias. It can as readily be said of a forty year old employee as a sixty-five year old one. *See Cone*, 14 F.3d at 531 (observing that the statement "long-term employees have a diminishing return" could apply equally to employees under age forty and over age forty). And even if we were to interpret the remark as Saladin urges, we still believe, in light of all the evidence, that Saladin has not shown, as he must, that there exists a genuine issue of disputed and material fact as to whether PackerWare's stated reason for the demotion "is pretextual—i.e., unworthy of belief." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quotations omitted). Put differently, the handful of remarks about which Saladin complains are insufficient to cast doubt on the legitimate, non-discriminatory reasons offered by PackerWare for his demotion.

We note, as well, that Saladin's understanding of the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, (2000), is quite mistaken. He claims that *Reeves* "revolutionized the analysis of employment cases," insofar as it held that "making a prima facie showing may be sufficient to allow the case to go to the jury." Aplt. Br. at 30. This of course is not at all what *Reeves* said. That decision, rather unremarkably, held only that an employee survives summary judgment when she presents a prima facie case of discrimination, *combined* with sufficient evidence of pretext. *Reeves*, 530 U.S. at 148. Saladin fails to meet this test because he fails to combine sufficient evidence of pretext with his prima facie case of discrimination.

B. Remaining Claims

■ We also reject Saladin's constructive discharge claim. He argues that what he regards as PackerWare's illegal discriminatory act—the decision to demote him to a maintenance position—made working conditions so difficult that he was forced to resign. Specifically, he claims that PackerWare knew when it demoted him that the rigors of the maintenance department would leave him no option but to resign. But not every hard choice put to an employee amounts to constructive discharge. It is only when a reasonable person in the employee's position would feel compelled to resign due to intolerably harsh conditions imposed on him or her that an employee establishes a claim of constructive discharge. *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir.1990). We do not believe Saladin has met this standard, not only because he had previously worked in an identical or similar position but also because he held the position after his demotion for more than fifteen months before resigning, and he did so without any significant complaints or difficulties.

■ Finally, we reject Saladin's objections to the grant of summary judgment on his retaliation claim, which he brings under the Family Medical Leave Act (FMLA). Contrary to Saladin's contention, we find no evidence that PackerWare demoted him because he had earlier requested FMLA leave to care for his ailing wife. Nor do we think that the handful of minor administrative errors committed by PackerWare in connection with the processing of Saladin's leave request, errors that were quickly corrected by the company, cast doubt on our disposition of this claim.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.